FILED



2018 JUN 18 AM 11: 42

David M. Doyle
710 S. Myrtle Ave, Ste 257
Monrovia, CA 91016
(626) 524-4255
Davedoyle9@gmail.com

Plaintiff, In Pro Per

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| DAVID M. DOYLE<br>710 S. Myrtle Ave, Ste 257<br>Monrovia, CA 91016<br><br>Plaintiff,<br><br>vs.<br><br>FAST ADVANCE FUNDING, LLC<br>20 N. 3RD Street,<br>Philadelphia, PA 19106<br><br>Defendants | Civil Action<br><br>CV 18-5412-DMG (FFMx)<br><br><br>Jury Trial Demanded |

## COMPLAINT:

Plaintiff DAVID M. DOYLE brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of FAST ADVANCE FUNDING, LLC (hereinafter "Fast Advance"), in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system (ATDS) in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

1

PAID

JUN 1 8 2018

Clerk, US District Court
COURT 4612

## I.       Introduction

1.      Plaintiff DAVID M. DOYLE ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge Fast Advance's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Fast Advance's and Fast Advance's agents' illegal telephone solicitations by which it markets its products and services to consumers who have placed their phone number on the National Do-Not-Call Registry, and Fast Advance's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.      Plaintiff alleges that Defendant Fast Advance Funding, LLC ("Fast Advance") placed multiple telemarketing sales calls using an ATDS to Plaintiff's cellular telephone number for the purposes of advertising Fast Advance's services, despite the fact that Plaintiff's cell phone number is on the National Do-Not-Call registry.

5.      Plaintiff never consented to receive any of these calls.

6.      All of the claims asserted herein arise out of Fast Advance's illegal telephone solicitation campaign and are a common fact pattern.

## II.       Jurisdiction and Venue

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.      Venue is proper in this court in that Defendants conduct business in, and a substantial

2

part of the events giving rise to plaintiff's claims occurred in, California's Los Angeles County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Los Angeles County. Defendant Fast Advance Funding, LLC conducts business in this judicial district by calling California consumers.

### III. Parties

9.      Plaintiff DAVID M. DOYLE ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the State of California who may be mailed at 710 S. Myrtle Ave, Ste 257, Monrovia, CA 91016.

10.     Defendant FAST ADVANCE FUNDING, LLC ("Fast Advance") is a Pennsylvania limited liability company with a registered principal address of 141 N. 2nd Street, Philadelphia, PA 19106, which transacts business in, *inter alia*, Los Angeles County, California. Upon information and belief, Fast Advance currently also maintains an office location at 20 N. 3rd Street, Philadelphia, PA 19106. Fast Advance markets and sells, *inter alia*, business loan and/or merchant cash advance services to consumers in California.

### Background
### The Telephone Consumer Protection Act

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

12.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

14.     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations

4

Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

> *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## **Factual Allegations**

17.     Fast Advance provides business loans and/or "merchant cash advance" services.

18.     Fast Advance uses telemarketing to promote its services.

19.     At all times material hereto, Plaintiff was the subscriber of the telephone number 626-524-4255 and paid his cell phone bill through T-Mobile.

20.     Plaintiff's personal cellular telephone number, 626-524-4255, has been successfully registered on the National Do-Not-Call Registry since 2017, more than 31 days prior to the calls.

21.     Plaintiff uses his cell phone for residential and consumer purposes.

22.     On March 20, 2018 at 2:22 PM, Plaintiff received an automated telemarketing call from a number which displayed on Plaintiff's caller ID as 878-206-0414. Plaintiff answered the call and said "hello" into his telephone repeatedly, but initially, there was not a live human-being on the phone line. Plaintiff then heard a click and pause, followed by a brief period of dead air, then heard a "bloop" balloon-popping sound, at which point a live human-being came on the phone line.

23.     It is very common for telemarketing calls to begin with a "balloon-popping sound", after which a live representative comes on the phone line. Balloon-popping sounds are made by a predictive dialer, which is classified as an ATDS. When a person answers the phone and says "hello", the called party's voice is picked up by the automated dialing system, which subsequently automatically connects a live representative to the call.

24.     Plaintiff then received a scripted sales pitch about business funding and was asked some "pre-qualifying questions".

25.     The caller had a strong Indian accent and was most likely located overseas.

26.     Plaintiff told the representative that he was busy and was not interested and hung up the phone.

27.     On March 22, 2018 at 8:17 AM, Plaintiff received another ATDS call from 878-206-0414. This call had nearly identical factual circumstances as the call received on March 20, with a balloon-popping sound at the beginning signifying the automated nature of the call. Plaintiff once again interrupted the agent's sales pitch and terminated the call because he was not interested.

28.     On March 26, 2018 at 11:06 AM, Plaintiff received another automated call from 878-206-0414. Plaintiff answered, but the call was unexpectedly abandoned about Plaintiff heard a "bloop", possibly due to a technical malfunction.

29.     On March 26, 2018 at 11:06 AM, just seconds after Plaintiff received an automated call from the same number, Plaintiff received an automated call from 878-206-0414. Plaintiff answered, said "hello" into his telephone, heard a click and pause, followed by a balloon-popping "bloop" noise, before a live human-being arrived on the phone line.

30.     Like before, an Indian representative asked Plaintiff several pre-qualifying questions. Plaintiff answered the questions and was then connected with an American representative, "Steve Marucci", who identified himself as an employee of Fast Advance Funding.

31.     As a result of the ATDS call, "Steve Marucci", Director of New Business Acquisition at Fast Advance, sent Plaintiff an e-mail from Steve@FastAdvanceFunding.com.

32.     During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. However, Plaintiff never consented to receiving any additional telemarketing calls. In fact, Plaintiff told the caller that if he was interested or had any questions, he would call *Fast Advance* back.

33.     Although Plaintiff pretended to be interested in Defendant's services, this did not constitute an "established business relationship" or constitute permission for Defendants to call back at any point in the future.

34.     As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA

action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call.

35.     Despite not giving Fast Advance consent or permission (verbally or in writing) to call back, Plaintiff received another sales call from Defendants at 1:03 PM on March 27, 2018 from the caller ID (267) 223-4218. Plaintiff notes that this telephone number is listed on Fast Advance's e-mail as Fast Advance's office phone number.

36.     Plaintiff did not want to talk to Fast Advance, as he was busy, so he told defendants he was not interested and hung up the phone once he realized that it was Fast Advance calling.

37.     The following morning, at 8:31 AM on March 28, 2018, Plaintiff got another call from Fast Advance, this time from 856-217-4100. According to the e-mail sent by Fast Advance's agent Steve Marucci on March 26, Steve Marucci's cell phone number is 856-216-4100.

38.     Plaintiff answered and told the representative that he was not interested and not to call back.

39.     Plaintiff's notes indicate that he received at least an additional seven (7) telemarketing calls from defendants on various dates in March and possibly April, however, Plaintiff will need to seek discovery from Defendant's telephone records to ascertain their exact dates and times, as they slipped through the cracks and Plaintiff was unable to accurately document them.

40.     Fast Advance did not have the Plaintiff's prior express written consent to make any of these calls.

8

41.     At no point during any of these calls did Plaintiff provide his consent to receive additional calls back from Fast Advance and/or its agents. In fact, Plaintiff told Defendants he would call them back if he was interested.

42.     Prior to these unsolicited calls, the Plaintiff has never done any business with Fast Advance and Plaintiff never provided Fast Advance with his cellular telephone number.

43.     In fact, before filing this lawsuit, the Plaintiff wrote to Fast Advance via e-mail on April 4, 2018 and demanded for his number to be placed on Fast Advance's internal Do-Not-Call list and also demanded to receive a copy of Fast Advance's internal Do-Not-Call policy.

44.     Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a lawsuit.

45.     Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

46.     Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

47.     To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records

documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Fast Advance informing them about the illegal calls before filing this lawsuit.

48.     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

49.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

50.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

51.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

52.     In summary, Plaintiff received at least thirteen (13) sales calls made using an ATDS from Defendants to Plaintiff's cell phone number which is registered on the National Do-Not-Call list. Defendants also denied Plaintiff's request for his number to be placed on Defendant's internal Do-Not-Call list by failing and/or refusing to do so upon written request. Finally, Defendants failed and/or refused to provide Plaintiff of copy of their internal Do-Not-Call policy, despite Plaintiff's written request.

## Causes Of Action

10

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

53.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

54.     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

56.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

57.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

58.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

59.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

60.     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

61.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Fourth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

62.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

63.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

64.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Fifth Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

65.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

66.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

12

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

67.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

68. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

69.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

71.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:
### IV.     Prayer for Relief

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **$42,000** (Thirteen counts of: "Sales call to a number registered on the National Do-Not-Call Registry" and "ATDS Call", and one count each of: "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list" and "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### V.     Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 18, 2018

**David M. Doyle**
**710 S. Myrtle Ave, Ste 257**
**Monrovia, CA 91016**
**(626) 524-4255**
**Davedoyle9@gmail.com**

**Plaintiff, In Pro Per**

14